D'AMICO, Appellant,

v.

DELLIQUADRI, Appellee.

[Cite as *D'Amico v. Delliquadri* (1996), 114 Ohio App.3d 579.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 96–T–5426.

Decided Sept. 30, 1996.

*Gemma & Gemma* and *Anthony N. Gemma*, for appellant.

*Ernest W. Auciello, Jr.* and *Timothy J. Fitzgerald*, for appellee.

CHRISTLEY, Judge.

Appellant, Bobbi Jo D'Amico, filed this appeal from a final judgment by the Trumbull County Court of Common Pleas, granting the motion to dismiss filed by appellee, David R. Delliquadri, D.O.

Appellant contracted condyloma (genital warts) from her boyfriend, who had been treated for the disease by appellee. Appellant herself was never treated by appellee for her condition, nor was she ever a patient of his.

On January 9, 1995, appellant filed a complaint against appellee on the grounds of professional tort, claiming that as a direct and proximate result of appellee's negligence, she contracted a communicable disease. She alleged that appellee was negligent in caring and treating her boyfriend, in failing to give him proper advice regarding the disease, and in failing to take proper and adequate precautions to prevent the communication of the disease to others who were likely to be affected by it.

On March 3, 1995, appellee filed a motion to dismiss appellant's complaint, pursuant to Civ.R. 12(B)(6). On July 24, 1995, he filed a renewal of his motion to dismiss on the additional ground that appellant had never responded to his motion to dismiss. On August 23, 1995, appellant filed a memorandum in opposition to appellee's motion to dismiss. On September 1, 1995, appellee filed a reply to appellant's memorandum in opposition to appellee's motion to dismiss.

On February 28, 1996, the court granted appellee's motion to dismiss and on March 7, 1996, appellant filed her notice of appeal to this court. On April 29,

1996, appellee filed a motion to dismiss appellant's appeal for failure to comply with several appellate rules; however, we overruled that motion on May 24, 1996.

In appellant's sole assignment of error, she argues that "[t]he trial court erred to the prejudice of Plaintiff–Appellant in sustaining Defendant–Appellee's motion to dismiss."

Essentially, in this case of first impression in Ohio, appellant is arguing that a physician who negligently fails to provide proper care, treatment, and advice to a patient who is afflicted with a contagious or communicable disease may be liable to a third party who is likely to be affected by that failure. Specifically, she argues that appellee failed to properly warn and advise her boyfriend that he was afflicted with a communicable disease, that the disease was sexually transmitted, that the disease was highly contagious to any person with whom he had sexual contact, and that the disease needed to be treated immediately. Appellant does not assert that appellee violated any duty owed to her specifically, but asserts that he owed a duty to her boyfriend and the general public.

Pursuant to Civ.R. 12(B)(6), a court may dismiss a complaint for failure to state a claim upon which relief can be granted if it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Johnson v. Wilkinson* (1992), 84 Ohio App.3d 509, 617 N.E.2d 707. In order for appellant to have a viable cause of action against appellee for negligence, she must prove that appellee breached a duty which he owed to her and that the breach proximately caused her injury. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 269. Whether appellee owed a duty to appellant is a question of law to be determined by the court. Therefore, if there was no set of facts which appellant could prove to establish that appellee owed her a duty, appellee's motion to dismiss was properly granted. We find that it was.

" ' * * * A person's failure to exercise ordinary care in doing or failing to do something will not amount to actionable negligence *unless such person owed to someone injured by such failure a duty* to exercise such ordinary care.' " (Emphasis added.) *Id.* at 318, 544 N.E.2d at 270, quoting *United States Fire Ins. Co. v. Paramount Fur Serv., Inc.* (1959), 168 Ohio St. 431, 7 O.O.2d 267, 156 N.E.2d 121, paragraph three of the syllabus.

The existence of a duty depends on the foreseeability of an injury to appellant. In order to determine if appellant was a foreseeable victim, it must be determined whether "a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee v. Ohio Welding Prod., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180, 472 N.E.2d 707, 710.

■ Indisputably, a physician has a duty to give his patient all necessary and proper instructions regarding the level of care and attention the patient should take and the caution to be observed. But that duty is a limited one as it applies to third parties. The only case law from Ohio, cited by appellant, concerned a deadly and, at that time, incurable disease, where the court stated:

"It is the duty of a physician who is treating a patient afflicted with smallpox to exercise ordinary care in giving notice of the existence of the contagious disease to other persons *who are known by the physician to be in dangerous proximity to such patient*, and a failure to discharge this duty will constitute negligence on the part of the physician available to any person for the recovery of damages resulting directly and proximately from such neglect on the part of the physician." (Emphasis added.) *Jones v. Stanko* (1928), 118 Ohio St. 147, 160 N.E. 456, paragraph two of the syllabus.[1]

Even appellant admits that appellee did not have a duty to her, for she states in her brief, "Plaintiff–Appellant brings her action claiming *not that Defendant–Appellee violated any duty owed to her specifically*, as a patient, but that Defendant–Appellee violated his duty to his patient, and to the public generally as concerns treatment of communicable diseases." (Emphasis added.)

■ We agree with appellee that appellant cannot sue him directly. The reason for this becomes apparent when the state of the physician/patient privilege is examined as it has been defined by the Ohio legislature.[2] In order to protect a patient's right to privacy in communicating with his or her physician, the legislature of Ohio enacted R.C. 2317.02(B) to govern the physician/patient privilege. R.C. 2317.02 mandates that certain persons be prohibited from testifying with regard to certain matters. Specifically, R.C. 2317.02 states:

"The following persons shall not testify in certain respects:

"* * *

"(B)(1) A physician * * * concerning a communication made to him by his patient in that relation or his advice to his patient, except as otherwise provided in this division * * * and except that, if the patient is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the physician may be compelled to testify on the same subject.

---

1. *Jones* dealt with a doctor's responsibility to tell a child's caretakers that the child had smallpox, a deadly disease in 1928.

2. There is no common-law physician/patient privilege recognized in Ohio.

"The testimonial privilege under this division does not apply, and a physician * * * may testify or may be compelled to testify in any of the following circumstances:

"(a) * * *

"(i) If the patient * * * gives express consent;

"(ii) If the patient is deceased, the spouse of the patient or the executor or administrator of his estate gives express consent;

"(iii) If a medical claim, * * * as defined in section 2305.11 of the Revised Code, an action for wrongful death, any other type of civil action, or a claim under Chapter 4123. of the Revised Code is filed by the patient * * *."

■ The statute was enacted to encourage patients to reveal all relevant information to their physicians without worrying that the information will later be disclosed. *Ohio State Med. Bd. v. Miller* (1989), 44 Ohio St.3d 136, 139, 541 N.E.2d 602, 604; *State v. Antill* (1964), 176 Ohio St. 61, 64–65, 26 O.O.2d 366, 367–368, 197 N.E.2d 548, 551–552.

■ Because the privilege did not exist at common law, but instead is dictated by a clear and unambiguous statute, the courts of Ohio are not free to modify the General Assembly's intent or change its mandates. Clearly, the legislature intended for the privilege to be given effect, unless one of several specific exceptions applied, thus waiving the privilege. See *State v. McGriff* (1996), 109 Ohio App.3d 668, 672 N.E.2d 1074.

Pursuant to R.C. 2317.02(B)(1), there are three instances when a waiver of the privilege occurs. *In re Miller* (1992), 63 Ohio St.3d 99, 585 N.E.2d 396; *State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672. In the first instance, R.C. 2317.02(B)(1)(a)(i) does not apply because her boyfriend did not expressly waive the privilege. In the second instance, R.C. 2317.02(B)(1)(a)(ii) does not apply, since he is not deceased. In the third instance, R.C. 2317.02(B)(1)(a)(iii) cannot apply, since the boyfriend has not filed any type of civil action placing his physical condition at issue.

Accordingly, unless appellant's testimony falls within one of the statute's exceptions, appellee would not be able to testify as to what he told the boyfriend. Thus, appellee would be unable to defend himself, as the boyfriend had exercised none of the three options. Thus, there was no waiver of the physician/patient privilege. *Hollis v. Finger* (1990), 69 Ohio App.3d 286, 590 N.E.2d 784.

If the legislature wishes to allow this type of lawsuit, then it needs to provide the corresponding legislation which would resolve the confidentiality and privilege issues. In light of the present state of the law in Ohio, however, we agree that

there is no recognized claim upon which relief may be granted in the instant matter and the trial court was correct in dismissing appellant's complaint.

We briefly note that appellant relies strongly upon the Pennsylvania Supreme Court's decision in *DiMarco v. Lynch Homes* (1990), 525 Pa. 558, 583 A.2d 422, wherein the court held in favor of a third person injured by a physician's failure to give his patient proper advice. That case is not binding on this court. Additionally, the whole issue of confidentiality under Pennsylvania law, and the ability of a physician to defend under those circumstances, was never raised.

Furthermore, as a matter of public policy, we find ourselves unable to accept the liberal interpretation of the Pennsylvania Supreme Court unless required to do so by our own legislature.

Accordingly, we choose not to follow the rationale in *DiMarco*. Therefore, appellee's motion to dismiss was properly granted, and appellant's assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and NADER, J., concur.